**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 09-4320**

———————

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

    v.

JAYRECE ELAINE TURNBULL,

              Defendant – Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt.   Alexander Williams, Jr., District Judge.  (8:08-cr-00137-AW-1)

———————

Submitted:  June 14, 2010          Decided:  July 2, 2010

———————

Before NIEMEYER, KING, and GREGORY, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

James Wyda, Federal Public Defender, Martin G. Bahl, Staff Attorney, Baltimore, Maryland, for Appellant.   Rod J. Rosenstein, United States Attorney, Jonathan C. Su, Deborah A. Johnston, Assistant United States Attorneys, Greenbelt, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jayrece Turnbull appeals her sentence of 108 months imprisonment, contending that the district court clearly erred in attributing a loss of more than $20 million to her for her role in a fraudulent property-tax refund scheme. Because the district court did not clearly err in making this finding, we affirm.

I.

Jayrece Turnbull pled guilty to mail fraud, in violation of 18 U.S.C.A. § 1341 (West Supp. 2010), possession of stolen property, in violation of 18 U.S.C. § 2315 (2006), conspiracy to commit money laundering, 18 U.S.C. § 1956(h) (2006), and tax evasion, in violation of 18 U.S.C. § 7201 (2006), for her part in a wide-ranging conspiracy that defrauded nearly $50 million from the government of the District of Columbia ("the District").

The scheme was started in 1989 by Turnbull's aunt, Harriette Walters, an employee of the District. Walters issued fraudulent property tax refunds supported by false paperwork, and used numerous co-conspirators in her scheme. In 2001, Walters recruited Turnbull into the conspiracy. Walters explained the scheme to Turnbull, and told her to deal only with a bank employee of Walters's choosing when depositing the checks

from the District, to leave the money in the account for more than thirty days, and to withdraw money in amounts of less than $5000. In February 2001, the first check, worth $131,571.33, was deposited into one of Turnbull's accounts. At the time of her arrest, Turnbull had twenty-six bank accounts that handled fraudulent deposits totaling $24,521,720.66. Turnbull had written checks totaling $225,000 to a bank official involved in the scheme, and had cashed checks payable to herself totaling $1,131,813.20.

At sentencing, the Government argued that Turnbull was responsible for $24 million in loss, the amount deposited in her twenty-six bank accounts. Pursuant to U.S. Sentencing Guidelines Manual § 2B1.1(a)(1), (b)(1)(L), a loss of more than $20 million resulted in a twenty-two level increase to Turnbull's base offense level of six. Turnbull argued that she was not aware of the full scope of her aunt's scheme and that she was responsible for no more than $7 million to $20 million in loss, for a twenty level offense increase. See USSG § 2B1.1(b)(1)(K). The district court ultimately accepted the Government's position, concluding that Turnbull was responsible for the $24,521,720.66 in loss and, accordingly, added twenty-two levels to her base offense level. The district court found that, regarding the conspiracy, "[w]hile we can't pinpoint what Ms. Turnbull specifically knew, we know generally from the

3

evidence that's been presented here that she had a general understanding of what was going on." The district court noted that Turnbull entered the scheme in 2001, and controlled twenty-six bank accounts that had 82 checks worth more than $24 million in deposits. The district court found that Walters, and not Turnbull, was the mastermind and that the co-conspirators were "depositing and writing checks off each other's accounts." Nonetheless, the district court explained that it was "actually convinced . . . that everyone knew exactly what was going on and . . . knew the scope of this conspiracy." The district court stated it was "clear" that "they all were cohorts. They all had understandings. There was a modus operandi." Specifically as to Turnbull, the district court reiterated that most of the checks were signed by Turnbull, that the bank statements were at her house, and that this evidence regarding the nature of her involvement "authorizes this court to find a clear inference of not just general knowledge but specific knowledge as to what was going on."

With the twenty-two level increase, and taking into account other enhancements, Turnbull's total offense level was thirty with a criminal history category of I, yielding an advisory guidelines range of 97-121 months. Absent the extra two levels for the loss adjustment, her advisory guidelines

4

range would have been 78-97 months. The district court ultimately sentenced Turnbull to 108 months imprisonment.

Turnbull filed a timely notice of appeal.

II.

On appeal, Turnbull challenges only the amount of loss attributed to her. Under Gall v. United States, 552 U.S. 38, 51 (2007), sentences are reviewed for procedural and substantive reasonableness. When considering the reasonableness of a sentence, we review legal conclusions de novo and factual findings, such as loss calculations, for clear error. United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir. 2008); see also United States v. Allen, 491 F.3d 178, 193 (4th Cir. 2007) ("In reviewing loss calculation, we review de novo the district court's interpretation of what constitutes 'loss,' while accepting the calculation of loss absent clear error."). The Government must establish the amount of loss by preponderance of the evidence, and "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003) (internal quotation marks omitted).

Pursuant to USSG § 1B1.3(a)(1)(B), a co-conspirator is liable for "all reasonably foreseeable acts and omissions of

5

others in furtherance of [a] jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." The Application Notes for the Guideline explain that:

> In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others.

USSG § 1B1.3, cmt. n.2.

On appeal, Turnbull argues that the district court failed to make any factual findings in support of its loss calculation and clearly erred in finding that Turnbull was responsible for all of the money deposited in her accounts because other co-conspirators, including Walters, had access to the accounts and the Government could not prove that Turnbull had signed all of the deposited checks.

We conclude that the district court did not clearly err in attributing more than $20 million in loss to Turnbull. First, contrary to Turnbull's suggestion, the district court did make factual findings regarding Turnbull's role in the offense and what acts were reasonably foreseeable to her. In addition, the Application Notes specify that the district court was permitted to infer the extent of Turnbull's involvement from the

6

surrounding facts. To that end, the Government's evidence that Turnbull was depositing a $410,000 check when her illicit activities first came to light, lied to investigators, gave a co-conspirator $225,000, and spent hundreds of thousands of dollars on luxury goods permitted the inference that Turnbull was aware of the vast scope of the conspiracy. Turnbull argues that the Government cannot actually attribute the $24 million to her, but her argument misapprehends the "reasonably foreseeable" standard. Even assuming Turnbull did not have actual knowledge of the $24 million in her accounts, given the amount of money she was spending and depositing, and the length of time she spent in the conspiracy, it was reasonably foreseeable that the fraud involved more than $20 million. In addition, Turnbull does not dispute that she was the holder of these bank accounts or that the bank statements were all mailed to her address. As the Government notes, Turnbull never contacted the bank regarding any unauthorized access of her accounts, and at the time of her arrest, Turnbull claimed that she was the only person with access to the accounts.

In sum, Turnbull's lengthy and extensive involvement in the scheme permitted the inference that Turnbull was specifically aware of its scope and that the amount of the fraud was reasonably foreseeable to her. Accordingly, the district

court did not clearly err in attributing more than $20 million in loss to her.

## III.

For the foregoing reasons, we affirm Turnbull's sentence of 108 months' imprisonment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED